SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

*Attorneys for Plaintiff*
*MASTEROBJECTS, INC.*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| MASTEROBJECTS, INC., <br><br> Plaintiff, <br><br> v. <br><br> GOOGLE INC., <br><br> Defendant. | Case No. CV 13-04304 PJH <br><br> **FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff MasterObjects, Inc. ("MasterObjects" or "Plaintiff") hereby files its complaint against defendant Google Inc. ("Google" or "Defendant"), for patent infringement. For its complaint, Plaintiff alleges, on personal knowledge as to its own acts and on information and belief as to all other matters, as follows:

**PARTIES**

1. MasterObjects is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Francisco, California, prior to January 1, 2010, and now Utrecht, Netherlands.

2. Google is a corporation organized under the laws of the State of Delaware, with its principal place of business in Mountain View, California.

**JURISDICTION AND VENUE**

3. This complaint asserts a cause of action for patent infringement under the Patent Act, 35 U.S.C. § 271. This Court has subject matter jurisdiction over this matter by virtue of 28 U.S.C. § 1338(a). Venue is proper in this Court by virtue of 28 U.S.C. § 1391(b) and (c) and 28 U.S.C. § 1400(b), in that Google may be found in this district, has committed acts of infringement in this district, and a substantial part of the events giving rise to the claim occurred in this district.

4. This Court has personal jurisdiction over Google because Google has a place of business in, and provides infringing products and services in, the Northern District of California.

**INTRADISTRICT ASSIGNMENT**

5. Pursuant to Civil LR 3-2(c), this case should be subject to district-wide assignment because it is an Intellectual Property Action.

I.    **STATEMENT OF FACTS**

   A.    **The Plaintiff MasterObjects and its Instant Search Technology**

   6.    From the earliest days of Internet search, the search process has been hampered by what is known as the "request-response loop." The user would type a query into a static input field, click a "submit" or "search" button, wait for the query to be sent to a remote database, wait for the result set to be returned to the server, wait for the server to build an HTML page, wait for the page to load into the browser, and then wait for the client window to be redrawn so that the result set could be viewed.

   7.    Inherent in the "request-response loop" is the pragmatic reality that, if the result set did not match user expectations, the entire process had to be repeated, recursively, until the results satisfied the user.

   8.    In 2000, Mark Smit, the founder of Plaintiff MasterObjects, invented a novel approach to search, an approach that solved the "request-response loop" problem. Smit envisioned a system where a dynamic and intelligent search field would immediately begin submitting a search query as soon as the user began typing characters into the query field. Using asynchronous communications technology, as the user typed more characters, the results in the drop-down box would change dynamically, becoming increasingly relevant as the string of characters lengthened. In essence, search would become effective and granular at the *character* level, not the block request *submit* level. More, this would happen real-time, as the user typed in characters, and not be dependent on hitting a "search" or "submit button."

   9.    MasterObjects' U.S. Patent No. 8,539,024 (the "'024 Patent"), entitled "System and Method for Asynchronous Client Server Session Communication," issued on September 17, 2013. Under the claims, a client object sends query messages to the server

system, with the term "query messages" being explicitly defined by the language of the claims themselves as a lengthening string of characters. *See* Claim 1, '024 Patent ("a server system, including one or more computers, which is configured to receive query messages from a client object . . . whereby the query messages represent the lengthening string . . . ."). A true and correct copy of the '024 patent is attached hereto as Exhibit A. MasterObjects makes and sells products that practice the '024 patent, and MasterObjects has been selling these products from approximately 2004 forward. MasterObjects remains a going concern today, selling products that practice its patented technology.

**B.    The Infringing Google Products.**

10.    Google products infringe the claims of MasterObjects' '024 patent as set out below.

**Google Instant**

11.    On September 8, 2010, Google launched Google "Instant." Google introduced Google Instant "as a new search enhancement that shows results as you type." Unlike the prior technology, where "you had to type a full search term, hit return, and hope for the right result," Google Instant uses asynchronous communication technology to begin sending results to the user as the user types, character-by-character. Google describes the benefit of Google Instant as follows:

> The most obvious change is that you get to the right content
> much faster than before because you don't have to finish
> typing your full search term, or even press "search."
> Another shift is that seeing results as you type helps you
> formulate a better search term by providing instant
> feedback. You can now adapt your search on the fly until
> the results match exactly what you want. In time, we may
> wonder how search ever worked in any other way.

Google: About Google Instant, http://www.google.com/instant.

12. In this fashion, Google Instant provides search results to users as the users type the queries. Search results are changed based on the additional characters inputted by the user, that is, as the query character string lengthens.

13. Google executives described Google Instant as representing "a fundamental shift in search," and otherwise recognized the innovative features of Google Instant in its release in September 2010.

**Google Suggest**

14. Google Suggest anticipates a user's query as the user types in individual characters in the query box, and asynchronously suggests complete queries that match the partial query being typed. As the user starts typing in the search box, the client asynchronously communicates with the server, and the server surveys records of previous searches to suggest potentially matching queries to the user.

15. Google describes its Google Suggest functionality as follows:

> As you type, Google's algorithm predicts and displays search queries based on other users' search activities. These searches are algorithmically determined based on a number of purely objective factors (including popularity of search terms) without human intervention. All of the predicted queries shown have been typed previously by Google users.

Google Web Search: Features: Autocomplete.

16. The benefits provided by Google Suggest parallel those provided by Google Instant, *e.g.*, speeding the search process, lessening user typing, catching mistakes mid-query, and otherwise increasing user efficiency.

**Google Client Access Points for Search**

17. Google makes, sells and distributes numerous client applications and platforms to provide access to its search products, including search suggestions. These

include the Chrome web browser, the Chrome operating system, the Android operating system, the Google Toolbar web browser application for Internet Explorer and Firefox, and Google Search applications for the iOS and Windows Phone platforms.  Each of these client applications and platforms forms part of systems and methods that infringe the '024 Patent by, for example, returning increasingly relevant search suggestions in response to lengthening query strings input by a user.

**Quick Search Box For Google Android**

18.     In October 2009, Google released an instant search functionality for its Android mobile phone platform, known as the "Quick Search Box."

19.     As Google describes the function benefits of its quick search box:

> Since keystrokes are at a premium when you're typing on
> your phone, Quick Search Box provides suggestions as you
> type, making it easy to access whatever you're looking for
> by typing just a few characters.  Rather than giving you one
> search box for the web and another for your phone, QSB
> provides one single search box to let you search content on
> your phone, including apps, contacts, and browser history,
> as well as content from the web, like personalized search
> suggestions, local business listings, stock quotes, weather,
> and flight status, all without opening the browser.

http://googlemobile.blogspot.com/2009/10/quick-search-box-for-android-search.html

**Google Knew Of The MasterObjects Patent**

20.     In June of 2008, MasterObjects patent counsel sent to Marissa Mayer, a Google Vice-President responsible for Google search products, and Kent Walker, Google's General Counsel, a letter introducing Google to MasterObjects.  A full and complete copy of this letter is attached as Exhibit B.[1]  The letter outlined MasterObjects' business, described

---

[1] William Hassebrock, a consultant to MaasterObjects, also sent Google CEO Eric Schmidt an email in September 2008 introducing MasterObjects and MasterObjects' technology, and noting the patent pending
… (Footnote continued on next page) …

MasterObjects' technology, referenced MasterObjects' website, and, included as attachments, then pending MasterObjects' applications. The letter closed by referencing a potential merger or acquisition opportunity, or, failing that, a license.

21. Google forwarded this notice letter to senior in-house patent counsel, Laura Majerus. In 2008, Ms. Majerus was one of an intimate group of in-house Google patent prosecution lawyers. She received responsibility for Google "personalized search" patent applications in 2008. In this capacity, she worked with two other Google in-house patent lawyers, Tim Pham and Ben Lee. Mr. Pham and Mr. Lee also had responsibility for search patent applications at Google in 2008. All three were on the same e-mail alias, and all three received e-mails sent to this group alias.

22. Ms. Majerus reviewed MasterObjects' letter, clicked through to the MasterObjects website and reviewed its contents. She also reviewed the attached patent applications. She then forwarded the letter to in-house business development executive Mary Himinkool. The transmittal email summarized work that Google should do in connection with evaluating the MasterObjects purchase opportunity.

23. Shortly after receiving the email, Ms. Himinkool forwarded the material to senior Google business development executive Mike Pearson, and copied Ms. Majerus on this response.

24. In 2008, Ms. Majerus became the in-house Google patent lawyer responsible for personal search patent prosecutions. Google Suggest, and ultimately Google Instant, were search applications, and Ms. Majerus was the Google lawyer responsible for the prosecution of related Google search patent applications for at least part of calendar year

---

nature of the technology. A true and correct copy of the September 2008 email from Mr. Hassebrock to Mr. Schmidt is attached hereto as Exhibit C.

2008 through at least 2010.

25. In January 2011, Elspeth White joined Google as an in-house patent lawyer. She inherited responsibility for several existing Google search patent applications, and authorized the filing of numerous additional Google search applications, including three explicitly relating to Google Instant, as set out below.

26. As the responsible in-house patent lawyers, Ms. Majerus and Ms. White supervised outside Google patent prosecution on the personalized search patents, including Gary S. Williams of the Morgan Lewis & Bockius firm and Paul E. Franz of the Fish & Richardson firm.

27. In 2004, Google filed an application for a predictive search technology, known as "Anticipated Query Generation and Processing in a Search Engine," now issued as U.S. Patent No. 7,836,044. Google employee Sep Kamvar was the lead inventor. Mr. Williams filed and prosecuted this application.

28. On August 28, 2008, just weeks after Ms. Majerus reviewed the MasterObjects applications and materials, Mr. Williams amended the claims in the then long outstanding and static Kamvar application. With this amendment, Google emphasized "instant search," *i.e.,* retrieving instant search results on the basis of partial and predicted queries. This is exactly the technology covered by the MasterObjects letter and applications, reviewed by Google counsel mere weeks earlier. Prior to that time, the claims in the Kamvar patent had remained largely unchanged in substance for four years.

29. By late February 2012, Google had filed four additional Kamvar applications, all covering aspects of "instant search." In these prosecutions, Google filed numerous Information Disclosure Statements. Prior to April 2012, Google did not disclose to the PTO the existence of the prior MasterObjects references.

30. Google did not forward to its outside personal search prosecution counsel, Gary S. Williams, the June 2008 MasterObjects letter. Mr. Williams saw that letter for the first time when MasterObjects' counsel marked it as an exhibit at Mr. Williams' deposition in January 2013. Nor did Google counsel inform Mr. Williams about the MasterObjects references prior to April 2012.

31. Mr. Williams, in fact, first learned of the MasterObjects references on April 23, 2012, when Google in-house patent lawyer Elspeth White told him about the by then three MasterObjects patents, and asked Williams to file an IDS in a continuing examination on the very next day on an "urgent" basis. Ms. White knew about the MasterObjects patents and patent litigation, and knew the litigation related to instant search, no later than early April 2012. Mr. Williams testified that he would have disclosed the MasterObjects references long earlier had he been aware of those references. After being told of the references, a lawyer in Mr. Williams' firm, David Sanker, reviewed the patents, concluded that they were material, and outside counsel disclosed the references in a series of IDS's filed in pending Kamvar family applications on April 30, 2012 (but only the Kamvar family).

32. In August 2010, Google filed a new provisional captioned "Predictive Query Completion and Predictive Search Results." The first named inventor was Othar Hansson, who was a principal engineer on the Google Instant project. This application followed from work Hansson and others had done on Google Instant.

33. In August 2011, Google filed three new patent applications depending from the 2010 "Predictive Query" Google Instant provisional.

34. From the date of the August 2011 filing through the end of calendar year 2012, Google filed numerous Information Disclosure Statements in the three Google Instant applications. None of these Information Disclosure Statements disclosed the MasterObjects

patents, although the Google lawyer supervising the prosecutions, Ms. Elspeth White, was fully aware of the references and indeed the underlying MasterObjects instant search patent litigation, no later than early April 2012.

35.     Google outside counsel conducted an applicant initiated interview summary with the PTO examiner on November 6, 2012 in the '134 and '135 applications, two of the Google Instant applications.  In this twin application interview, as set forth in the PTO interview summary, Google counsel emphasized that none of the disclosed prior art revealed the novel elements of the claim.  The MasterObjects references, which Google had carefully not disclosed to the Office, however explicitly described and anticipated the claimed Google technology.

36.     The PTO issued Notices of Allowances in these two of the Google Instant applications in December 2012, calling out the points of novelty communicated by Google counsel in prior Office responses and the examiner interview.  The allowance date was set as of March 25, 2013.

37.     After considerable debate, Google agreed to produce Ms. Elspeth White for deposition on Tuesday, March 19, 2013 in a related action.  On the Thursday and Friday of the week prior, March 14 and March 15 respectively, Google outside counsel Paul E. Franz filed a Request for Continuing Examination and a new IDS form in two of the three Google Instant applications, specifically, the two allowed in December.  For the first time, this post-allowance IDS disclosed the MasterObjects references.

38.     In prosecuting its five Kamvar applications, several of which have now issued as patents, and the three Hansson Google Instant applications, Google represented to the PTO that its instant search claims were novel and patentable over all prior art, including the central

piece of prior art Google now asserts as invalidating against the long prior but substantially identical MasterObjects patents.

39.     At no time did in-house Google patent counsel responsible for the Kamvar and Hansson prosecution assess or consider whether Google Instant infringed the long-prior MasterObjects patents.  Instead, they turned a blind eye to that possibility, and instead vigorously pursued competitive Google claims.

**COUNT I**

**PATENT INFRINGEMENT**
**(The '024 Patent)**

40.     MasterObjects incorporates and re-alleges, as though fully set forth herein, the allegations contained in paragraphs 1-39 above.

41.     On September 17, 2013, United States Patent No. 8,539,024, entitled "System and Method for Asynchronous Client Server Session Communication," was duly and legally issued.  A true and correct copy of the '024 patent is attached hereto as Exhibit A.

42.     Mark Smit and Stefan van den Oord are the inventors of the '024 instant search patent.  The '024 Patent has been assigned to Plaintiff.  Plaintiff MasterObjects is the sole legal and rightful owner of the '024 Patent.

43.     Google makes, uses, and sells products that infringe the '024 Patent, including the products described in Paragraphs 10-19 above.  This conduct constitutes infringement under 35 U.S.C. § 271(a).

44.     As a result of the infringement by Google, Plaintiff has been damaged, and will continue to be damaged, until this Defendant is enjoined from further acts of infringement.

45.     Google will continue to infringe unless enjoined by this Court.  Plaintiff faces

real, substantial and irreparable damage and injury of a continuing nature from infringement for which Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for entry of judgment:

A.    that the '024 Patent is valid and enforceable;

B.    that Defendant has infringed one or more claims of the '024 Patent;

C.    that Defendant account for and pay to Plaintiff all damages caused by the infringement of the '024 Patent, which by statute can be no less than a reasonable royalty;

D.    that this Court issue a preliminary and final injunction enjoining Google, its officers, agents, servants, employees and attorneys, and any other person in active concert or participation with them, from continuing the acts herein complained of, and more particularly, that Google and such other persons be permanently enjoined and restrained from further infringing the '024 Patent;

E.    that Plaintiff be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendant's infringement of the '024 Patent;

F.    that this Court require Defendant to file with this Court, within thirty (30) days after entry of final judgment, a written statement under oath setting forth in detail the manner in which Defendant has complied with the injunction;

G.    that this Court award Plaintiff its costs and disbursements in this civil action, including reasonable attorney's fees; and

H.    that Plaintiff be granted such other and further relief as the Court may deem just and proper under the current circumstances.

Dated:  November 18, 2013        Respectfully submitted,


*/s/ Spencer Hosie*
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
Transamerica Pyramid
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

Attorneys for Plaintiff
*MasterObjects, Inc.*

**DEMAND FOR JURY TRIAL**

Plaintiff, by its undersigned attorneys, demands a trial by jury on all issues so triable.

Dated:  November 18, 2013          Respectfully submitted,

*/s/ Spencer Hosie*_____
SPENCER HOSIE (CA Bar No. 101777)
shosie@hosielaw.com
DIANE S. RICE (CA Bar No. 118303)
drice@hosielaw.com
DARRELL R. ATKINSON (CA Bar No. 280564)
datkinson@hosielaw.com
HOSIE RICE LLP
Transamerica Pyramid
600 Montgomery Street, 34th Floor
San Francisco, CA 94111
(415) 247-6000 Tel.
(415) 247-6001 Fax

Attorneys for Plaintiff
*MasterObjects, Inc.*